1    SEYFARTH SHAW LLP
     Patricia H. Cullison (State Bar No. 101636)
2    pcullison@seyfarth.com
     Allison B. Moser (State Bar No. 223065)
3    amoser@seyfarth.com
     560 Mission Street, Suite 3100
4    San Francisco, California 94105
     Telephone: (415) 397-2823
5    Facsimile: (415) 397-8549

6    Attorneys for Defendants
     MCKESSON CORPORATION, formerly known as
7    MCKESSON HBOC, INC., JOHN HAMMERGREN,
     PAUL KIRINCIC, JERRY WARREN and DONNA DRAHER
8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11   CHRISTINE H. CHANG,                )    Case No. C 07-3981 MJJ
                                        )
12               Plaintiff,             )    **DEFENDANTS JOHN
                                        )    HAMMERGREN, PAUL KIRINCIC,
13         v.                           )    JERRY WARREN AND DONNA
                                        )    DRAHER'S REQUEST FOR JUDICIAL
14   MCKESSON HBOC, INC; MCKESSON       )    NOTICE IN SUPPORT OF
     HBOC CEO JOHN HAMMERGREN;          )    DEFENDANTS' MOTION TO DISMISS
15   MCKESSON HBOC EXECUTIVE VICE       )    PLAINTIFF'S AMENDED
     PRESIDENT PAUL KIRINCIC; MCKESSON  )    COMPLAINT**
16   HBOC SENIOR VICE PRESIDENT JERRY   )
     WARREN; MCKESSON HBOC VICE         )    Date: February 26, 2008
17   PRESIDENT CHRISTOPHER MAHER;       )    Time: 9:30 a.m.
     MCKESSON HBOC VICE PRESIDENT TOM   )    District Court Judge: Honorable Martin J.
18   VON; MCKESSON HBOC VICE PRESIDENT  )    Jenkins
     TOM CAPIZZI; MCKESSON HBOC         )    Courtroom: 11, 19th Floor
19   DIVISION MANAGER DONNA DRAHER;     )
     MCKESSON HBOC DIVISION MANAGER     )
20   TOM PUTHUFF; MCKESSON HBOC         )
     DIVISION MANAGER KEVIN MYRICK;     )
21   MCKESSON HBOC HUMAN RESOURCE       )
     RICH SOUBLET; and DOES 1 through 100, )
22   inclusive,                         )
                                        )
23               Defendants.            )
                                        )
24   _____)

25         Pursuant to Federal Rules of Evidence 201, Defendants John Hammergren, Paul Kirincic,

26   Jerry Warren and Donna Draher ("Defendants") hereby request that this Court take judicial

27   notice of the following:

28

                                        1

1    Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the Complaint filed June 29,

2  2007, by Plaintiff Christine Chang against McKesson HBOC, Inc. *et al*, in the Superior Court of

3  California, County of San Francisco, Case No. CC07-464740.

4    In deciding a motion under Rule 12(b) of the Federal Rules of Civil Procedure, the Court

5  can take judicial notice of, and consider, facts that are not subject to reasonable dispute, i.e. facts

6  that are capable of accurate and ready determination by resort to sources whose accuracy cannot

7  reasonably by questioned.  Federal Rules of Evidence 201; *MGIC Indem. Corp. v. Weisman*, 803

8  F.2d 500, 504 (9th Cir. 1986).

9    The foregoing pleadings, summary of pleadings and laws of the State of California are

10  not subject to reasonable dispute, as they are capable of accurate and ready determination by

11  resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).  Thus,

12  Defendants respectfully request that the Court take judicial notice of the above listed document

13  and its content.

14  DATED: January 22, 2008                     SEYFARTH SHAW LLP

15

16                                              By _____

17                                                    Patricia H. Cullison
                                                     Allison B. Moser
18                                              Attorneys for Defendants
                                                MCKESSON CORPORATION, formerly
19                                              known as MCKESSON HBOC, INC.,
                                                JOHN HAMMERGREN, PAUL
20                                              KIRINCIC, JERRY WARREN and
                                                DONNA DRAHER
21

22  SF1 28312859.1 / 56248-000002

23

24

25

26

27

28
                                              2
        Defendants' Request for Judicial Notice– Case No. C 07-3981 MJJ

Exhibit 1

CASE MANAGEMENT CONFERENCE SET

SHORT TITLE:                                              CASE NUMBER:

ENDORSED
FILED
San Francisco County Superior Court

NOV 3 0 2007   9:00 AM

DEPARTMENT 212

JUN 2 9 2007

GORDON PARK-LI, Clerk
BY: CRISTINA E. BAUTISTA
Deputy Clerk

*CHRISTINE CHANG PRO PER*
*341 TIDEWAY DR. #214*
*ALAMEDA, CA 94501   TEL: (510) 769-8232*

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO, UNLIMITED JURISDICTION

CHRISTINE H. CHANG,                    ) NO. CGC07- 464740
                                       )
        Plaintiff,                     )
                                       )
vs.                                    )  COMPLAINT FOR DAMAGES
                                       )
MCKESSON HBOC, INC;                    )
MCKESSON HBOC CEO                      ) 1. BREACH OF IMPLIED CONTRACT
JOHN HAMMERGREN;                       ) 2. WRONGFUL TERMINATION
MCKESSON HBOC EXECUTIVE VICE           ) 3. FRAUD
PRESIDENT PAUL KIRINCIC;               ) 4. VIOLATION OF FUNDAMENTAL DUE
MCKESSON HBOC SENIOR VICE              )    PROCESS AND EQUAL PROTECTION RIGHTS
PRESIDENT JERRY WARREN;                ) 5. EQUITABLE TOLLING OF STATUTE OF
MCKESSON HBOC VICE PRESIDENT           )    LIMITATION
CHRISTOPHER MAHER;                     ) 6. FOR SEVERANCE, DISABILITY, VACATION
MCKESSON HBOC VICE PRESIDENT           )    PAYS, AND INTEREST, PUNITIVE
TOM VON;                               )
MCKESSON HBOC VICE PRESIDENT           )
TOM CAPIZZI;                           )
MCKESSON HBOC DIVISION                 )    JURY TRIAL DEMANDED
MANAGER DONNA DRAHER;                  )
MCKESSON HBOC DIVISION                 )
MANAGER TOM PUTHUFF;                   )
MCKESSON HBOC DIVISION                 )
MANAGER KEVIN MYRICK;                  )  Corporate Secretary's Dept.
MCKESSON HBOC HUMAN                    )
RESOURCE RICH SOUBLET:                 )  Received by    *Anne Shuford*
and DOES 1 through 100, inclusive,     )  Date received  *07-03-07*
                                       )  Manner received  *Courier*
        Defendants.                    )

This page may be used with any Judicial Council form or any other paper filed with the court.        Page / 

ADDITIONAL PAGE
Attach to Judicial Council Form or Other Court Paper

SHORT TITLE:

CASE NUMBER:

## PARTIES

1. Plaintiff Christine Chang (hereinafter "plaintiff Chang"), an individual, worked for McKesson HBOC Inc. (hereinafter "McKesson") as system programmer starting from October 16, 1995 until March 30, 1999. Plaintiff complains against the Defendants, and each of them, jointly and severally, upon information and belief and allegations. Plaintiff is a citizen of the United State of America, and a citizen and resident of the City of Alameda, State of California.

2. The Defendant McKesson is America's oldest and largest healthcare services company, 16th largest corporation on the New York Stock Exchange, third largest company by revenue in San Francisco Bay Area, employeed over 30,000 employees across the United States and around the world, and engages pharmaceutical businesses throughout North America, United Kingdom, and other European countries.

3. Plaintiff is informed and believes that Defendant John Hammergren is the McKesson Chairman, President and Chief Executive Officer.

4. Plaintiff is informed and believes that Defendant Paul Kirincic is the McKesson Executive Vice President for Human Resource.

5. Plaintiff is informed and believes that Defendant Jerry Warren is the McKesson Senior Vice President, Compensation and Benefits.

6. Plaintiff is informed and believes that Defendant Christopher Maher was the McKesson Vice President, Compensation and Benefits on or about May 1, 2000 and March 1, 2001.

7. Plaintiff is informed and believes that Defendant Tom Von was the McKesson Vice President on or

This page may be used with any Judicial Council form or any other paper filed with the court.

Page 2

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

SHORT TITLE:

CASE NUMBER:

1    about March 30, 1999.

2    8.  Plaintiff is informed and believes that Defendant Donna Draher was the McKesson Information

3

4    Technologies Division Manager on or about March 30, 1999.

5    9.  Plaintiff is informed and believes that Defendant Tom Puthuff was the McKesson Information

6

7    Technologies Division Manager on or about March 30, 1999.

8    10. Plaintiff is informed and believes that Defendant Kevin Myrick was the McKesson Information

9    Technologies Division Manager on or about Spring 1998.

10   11. Plaintiff is informed and believes that Defendant Rich Soublet was the McKesson Human Resource

11

12   Specialist on or about March 30, 1999.

13   12. The true names and capacities, whether individual, corporate associate, or otherwise of the Defendants

14   herein designated as DOES 1 through 100, inclusive, whose names are unknown to plaintiff, therefore,

15

16   sues said Defendants by such fictitious names.  Plaintiff prays leave of the Court to amend this complaint

17   to insert the true names and capacities of such Defendants with appropriate allegations.  Each of the

18   Defendants designated herein as a DOE is responsible for the events alleged and liable to Plaintiff.

19
                              FIRST CAUSE OF ACTION
20                         BREACH OF IMPLIED CONTRACT

21
22   13. Plaintiff Chang accepted McKesson's offer of employment as System Programmer, commencing on

23   October 16, 1995, at a salary of $4,583.33 per month.  On October 3, 1995, McKesson sent Plaintiff

24   Chang the new hire packet consisting confirmation of employment, benefits information, necessary forms

25   to complete for payroll purposes, and schedules of New Hire Orientation and Benefits Orientation.

26

27

This page may be used with any Judicial Council form or any other paper filed with the court.

Page   3

| SHORT TITLE: | CASE NUMBER: |
|---|---|

1  Plaintiff Chang was eligible for immediate participation of all benefit plans, except for the Profit Sharing

2  Investment Plan (PSIP) and Retirement Plan which had one year waiting period.  Starting the first day of

3  employment Plaintiff Chang participated in all benefit plans eligible, one year later, participated in PSIP

4

5  and Retirement Plans.

6  14. In addition to working fourty hours per week in the office, Plaintiff Chang worked from home nearly

7  every weekends for approximately two years, testing or installing McKesson application softwares using

8  company lap top.  The McKesson policy offers compensation time for those extra hours worked without

9

10  overtime pay.  The compensation time accrued could not be utilized because the heavy workload during

11  the week and continuous weekend software installations.

12

13  15. There were on-call duties for seven days at a time based on twenty-four hours day.  Plaintiff Chang

14  rotated with two other coworkers who carried company pager, cell phone, lap top, and remained

15  within the paging distant for troubleshooting purposes.  The calls in many occassions were problems

16

17  of other programmer or division's projects, or while Plaintiff Chang was on vacation or sick leave.

18  The time for on-call duties were never compensated by McKesson.

19  16. Starting April 1996 through early 1998, Plaintiff Chang's desk top computer frequently

20  malfunctioned.  The malfunctions ranged from insufficient memory, not enough disk space, missing

21

22  window ICON access, network access not available, unable to access application, defective floppy drive,

23  and defective CD drive.  Each time the Network Division was contacted which made superficial,

24  temporary fixes, but never resolved the core problem.

25

26

27

This page may be used with any Judicial Council form or any other paper filed with the court.

Page 4

SHORT TITLE:

CASE NUMBER:

1    17. Plaintiff Chang requested new computer with appropriate capacity to accomplish projects and execute

2    software testing and installation.  But the requests were denied repeatedly by the Information

3

4    Technologies Division Manager Kevin Myrick, while other coworkers in the division received state-of-

5    the-art new computers.  (CALIFORNIA CIVIL CODE SECTION 51[b])

6
     18. Soon after a McKesson company-wide network environment upgrade, Plaintiff Chang's computer
7
     "RAN OUT OF MEMORY SPACE" and was unable to display basic Window ICON.  The Division
8
9    Manager Kevin Myrick, found a used computer previously belonged to a secretary, to replace Plaintiff

10   Chang's obsolete computer. (CAL CIV CODE SEC 51[b] and CAL GOV CODE TITLE II, SEC 12940)

11
     19. Plaintiff Chang worked for McKesson as system programmer, monitoring and implementing system
12
     and application softwares on weekly basis for McKesson pharmaceutical nationwide user accesses, but
13
14   the Division Manager Kevin Myrick would not supply a computer with compatible disk and memory

15   spaces to run basic WINDOW environment.  The Division Manager Kevin Myrick supplied state-of-the-
16
     art computer equipments to other coworkers in the Division, but persistently denied Plaintiff Chang's
17
18   requests for a compatible computer to accomplish tasks.

19
     (TITLE II CALIFORNIA CODE OF REGULATION 7286.6[b])
20
21   20. A secretary's used computer was afforded more disk and memory spaces than Plaintiff Chang's

22   obsolete computer.  (CALIFORNIA CODES in No. 18 and No. 19 above)

23
     21. In November 1996 Plaintiff Chang received satisfactory performance rating and pay increase from
24
25   the Division Manager Kevin Myrick.  However, the pay increase was never adjusted in the payroll.

26

27
     This page may be used with any Judicial Council form or any other paper filed with the court.

                                                                          Page    5

| SHORT TITLE: | CASE NUMBER: |
|---|---|

1  (TITLE VII, SEC 43.10[9][a][i][ii])

2  22.  In November 1977 immediately after Plaintiff Chang had surgery and took medical leave, the

3  Division Manager Kevin Myrick threatened to downgrade Plaintiff's position and gave "needed

4  improvement" performance rating without informing any performance problem throughout the year.

5

6  (RESTATEMENT II, SEC 767 ETHICALS and Cal Labor Code Sec 132a and Disability)

7  23.  Plaintiff Chang worked double shifts on divisional responsibilities and implementing Quality

8  Assurance Division's testing environments to pull up the performance rating.  By March 1998 the

9  Manager changed Plaintiff's performance rating to "SATISFACTORY" and COMPLIMENTED plaintiff

10  JOB-WELL-DONE.  Plaintiff also received special appreciation in writing by the Quality Assurance

11  Division for implemented the testing environments urgently needed.  But the pay raise from November

12  1996 was never adjusted in Plaintiff's payroll. (FEDERAL FAIR LABOR STANDARDS ACT [FLSA])

13  24.  The Division Manager Kevin Myrick denied Plaintiff Chang's training requests while all other

14  coworkers received training.  In 1998 the Manager stated to Plaintiff that the trainings were not available

15  to Plaintiff, or there wasn't budget to afford training for Plaintiff.  The two courses eventually approved

16  were either cancelled or scheduled after Plaintiff was laid off. (CAL CIV CODE SEC 51[b] and TITLE

17  II CCR 7286.6[b] and CAL GOV CODE SEC 12940, TITLE II, DIV 3, PART 2.8.)

18  25.  Starting 1996 through 1998 Plaintiff Chang requested second phone line be installed at Plaintiff's

19  residence for installation and troubleshooting purposes.  The Division Manager Kevin Myrick denied the

20  request while other coworkers had the benefit. (Line 24 CAL CIV CODE and  TITLE II CCR and GOV)

This page may be used with any Judicial Council form or any other paper filed with the court.    Page __6__

SHORT TITLE:

CASE NUMBER:

1   26.  The Division Manager Kevin Myrick promoted a coworker as the Manager of Installation Scheduling

2   (hereinafter "DOE1).  The Manager DOE1 from Operation Division often sabotaged Plaintiff Chang's

3

4   weekend software installations causing irregularities in Pathway Applications on Tandem Systems.

5   Plaintiff submitted actual evidence and witness accounts related to the sabotages to the new Division

6

7   Manager Tom Puthuff who recognized the severity of DOE1's actions . (CAL CIV CODE SEC 51[b] and

8   TITLE II CCR 7286.6[b])

9   27.  In November1998, as Plaintiff submitted evidence and witness accounts to the new Manager who

10  advised plaintiff's right to file grievances against the previous Division Manager Kevin Myrick and DOE1,

11

12  for the unequal treatments and discrimination done to plaintiff.  In the grievances Plaintiff also requested

13  retroactive back-pay of the November 1996 pay raise.

14  (TITLE VII SEC 43.10[9][a][i][ii] and TITLE II CCR 7286.6[b])

15

16  28.  When filing the grievances Plaintiff Chang was suffering migraine and tension headaches for several

17  months caused by continuous discrimination and sabotages.  Plaintiff was treated by Kaiser Neurologist

18  who prescribed medications to treat the headaches.  The Manager Tom Puthuff was well aware of

19  Plaintiff's disability.  The Manager often advised Plaintiff to take breaks between projects and during

20

21  work. (CAL LABOR DISABILITY CODE)

22  29.  Plaintiff Chang's grievances were denied by the Division Managers, Tom Puthuff and Donna Draher.

23  Plaintiff's appeal to the Vice President Tom Von was also denied. (Line 26 - CAL CIV and CCR CODES)

24

25  30.  On March 30, 1999, several months after Plaintiff's grievances and appeal were denied Plaintiff was

26

27

This page may be used with any Judicial Council form or any other paper filed with the court.

Page __7__

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

1  laid off by the Vice President Tom Von WITHOUT NOTICE, CAUSE, AND SEVERANCE PAY.

2  (TITLE VII SEC 43.10[2][d] RETALIATION and 43.01[2][b][d] and CAL LABOR CODE SEC 2922)

3

4  31. All unpaid severance, vacation, disability, and back pay became due on March 30, 1999. (TITLE II

5  CCR 7286.9 and 7286.6[b] and CAL LABOR CODE SEC 201, 2926, TITLE VII SEC 4.01[2][a][i] and

6  4.1[2][c] SEVERANCE PAY and CAL LABOR CODE SEC 227.3)

7

8  32. Defendant McKesson received and accepted the benefits of the services of Plaintiff Chang for three

9  and one half years knowing Plaintiff was providing such services in reliance on the implied employment

10  contract. (CAL LABOR CODE SEC 132a and II CCR 7286.6[b] and UNJUST ENRICHMENT)

11

12  33. At all times herein relevant, Plaintiff Chang performed all system programmer tasks successfully in

13  timely manner, and implemented the Quality Assurance Division's testing environments single-handedly

14  with constant support and modifications, except to the extent Plaintiff's performance was prevented by

15  the Division Manager Kevin Myrick and DOE1's conducts. (CAL CIVIL CODE SEC 51[b] and TITLE II

16  CCR 7286.6[b])

17

18  34. The Defendants breached implied contract and acted with bad faith violating the Codes and Statutes

19  intentionally. Starting March 30, 1999 the Defendants had unlawfully denied Plaintiff's rights to the

20  severance pay from McKessonHBOC Inc. Severance Plan SPD. (TITLE VII SEC 4.01[2][c])

21

22  SECOND CAUSE OF ACTION<br>WRONGFUL TERMINATION

23

24  35. Plaintiff Chang was approached by the Division Manager Tom Puthuff to attend a meeting. Plaintiff

25  asked the Manager in relate to the meeting in order to prepare report and document. The Manager refused

26

27

This page may be used with any Judicial Council form or any other paper filed with the court.

Page **8**

| SHORT TITLE: | CASE NUMBER: |
|---|---|

1  to answer who simply demanded Plaintiff to attend the meeting as soon as possible. (RESTATEMENT II

2  TORTS SEC 870 and TITLE VII SEC 43.10[2][d] and TITIE II CCR 7286.6[b])

3

4  36.  On March 30, 1999, upon arrival of the conference room Plaintiff Chang realized that the Vice

5  President Tom Von was the only other person in the meeting.  The Vice President laid off Plaintiff by the

6  reason of "REDUCTION IN FORCE", then repeatedly coerced Plaintiff to sign the "WAIVER AND

7

8  GENERAL RELEASE OF CLAIMS" in exchange for severance pay. (CAL LABOR CODE SEC 201 and

9  SEC 2926 and 4.01[2][C] SEVERANCE PAY and TITLE VII SEC 43.10[2][d] RETALIATION)

10  37.  Plaintiff Chang did not sign the WAIVER knowing the vice president Tom Von was retaliating

11

12  against Plaintiff filing the grievances and appeal. (TITLE VII SEC 43.10[2][d] RETALIATION)

13  38.  The Vice President then instructed Human Resource Staff to escort Plaintiff out of McKesson

14  Building immediately after collecting company pager, lap top, and keys from Plaintiff. (TITLE VII

15  SEC 43.10[2][d] RETALIATION and RESTATEMENT II TORTS SEC 870 and II CCR 7286.6[b])

16

17  39.  Plaintiff Chang was devastated and aggravated being forced out of employment without notice,

18  without cause, and without severance pay;  and was severely humiliated being escorted to leave the

19  building without any justification.  Plaintiff was suffering migraine and tension headaches before the

20

21  termination of employment occurred,  the defendants' reckless acts caused Plaintiff sustain further

22  psychological injuries.  In the subsequent months Plaintiff was unable to attain daily functions or

23  seek work, and was forced to live on $812 monthly unemployment compensation. (RESTATEMENT

24  II TORTS SEC 870 and CAL LABOR CODE SEC 132a and TITLE II CCR 7286.6[b])

25

26

27

This page may be used with any Judicial Council form or any other paper filed with the court.

Page _9_

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

| SHORT TITLE: | CASE NUMBER: |
|---|---|

40. Plaintiff Chang worked nearly every weekends for approximately two years installing application softwares on Tandem Systems. There were times Plaintiff worked double shifts in order to meet Quality Assurance Division's deadlines to test McKesson Pharmaceutical Pathways Applications. Plaintiff was the only system programmer in McKesson who installed Tandem Pathways changes, and the only system programmer who implemented the Quality Assurance Division's Tandem Pathways testing environments. When the laid off occurred Plaintiff was preparing for the scheduled Tandem Application changes on the coming weekend. Plaintiff's function was critical for McKesson Pharmaceutical Pathways Applications.

41. The Defendants Vice President Tom Von, and Information Technologies Division Managers Tom Puthuff and Donna Draher knew that:

a) They laid off Plaintiff on "REDUCTION IN FORCE" was FALSE.

b) Plaintiff suffered migraine and tension headaches for several months, but still worked regularly 40 hours week in the office, and from home on the weekends, and on-call duties for seven days straight based on twenty-four hours days.

c) The reckless WRONGFUL TERMINATION would cause Plaintiff further psychological injuries.

d) The termination of employment without notice and without severance pay would cause economic injuries to Plaintiff.

e) The Vice President Tom Von ordered Plaintiff's immediate departure from McKesson Building after the termination of employment, intended to humiliate Plaintiff in retaliation of Plaintiff's filing grievances and appeal.

This page may be used with any Judicial Council form or any other paper filed with the court.

Page 10

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

42. As a direct and proximate result of Defendants' fraudulent acts, Plaintiff was wrongfully terminated. Plaintiff sustain general and special damages in an amount according to proof as established at trial.

THIRD CAUSE OF ACTION
FRAUD

43. The Defendants McKesson fraudulently breached the express "McKesson HBOC, Inc. Severance Plan SPD". During the termination meeting on March 30, 1999, the Vice President Tom Von supplied Plaintiff Chang the Attachment A of "McKesson HBOC, Inc. Severance Plan SPD" as follows:

Severance Payment: Based on an expected termination date of March 31, 1999, Plaintiff's severance benefit is $4,466.54 which represents four (4) weeks' pay.

In addition, Plaintiff will receive the following:

1. TAP credits up to a maximum of $500 to help with your transition (job training)

2. COBRA premium payments for 3 months (health insurance)

3. Membership with Alumnae Resources

4. Outplacement assistance with Interim Career Solutions - A 3 day "Job Preparation Workshop"

Plaintiff received all "In addition benefits 1 through 4" DURING THE TERMINATION MEETING and was scheduled to attend the three day Job-Preparation-Workshop in the following week. But the Vice President Tom Von stated that Plaintiff wasn't qualify to receive the portion of "Severance Payment" of $4,466.54 unless Plaintiff sign the "WAIVER AND GENERAL RELEASE OF CLAIMS". (Fraud and Coercion and Breach of Established McKesson HBOC Inc. Severance Plan SPD - Torts Liabilities)

44. A company established plan can not be taken away unless approved by Labor Commission.

This page may be used with any Judicial Council form or any other paper filed with the court.

Page __11__

| SHORT TITLE: | CASE NUMBER: |
|---|---|

1  The Vice President Tom Von's cavilier attitude toward Plaintiff Chang using Defendant McKesson's

2  enormous bargaining power to fraudulently and oppresively discriminate against Plaintiff.

3

4  (TITLE VII SEC 4.01[2][c] ERISA)

5  45. The Vice President Tom Von fraudulently carved up the "McKesson HBOC Inc. Severance Plan SPD"

6  into separate portions and stated that Plaintiff qualified for certain portions of Severance Plan, but NOT

7

8  THE PORTION OF FOUR WEEKS SEVERANCE PAY.  The Vice President Tom Von stated that

9  Plaintiff was to receive all the transitional and Cobra health Insurance benefits in the "McKesson HBOC

10  Inc. Severance Plan SPD" except for the SEVERANCE PAY ACCORDING TO COMPANY POLICY.

11

12  (California Labor Code 206.5 and Title II California Code Of Regulation 7286.6[b])

13  46. Plaintiff Chang is informed and believes and alleged that it is Defendant McKesson's GENERAL

14  SCHEME, in coercing separated employees into signing the "WAIVER AND GENERAL RELEASE OF

15  CLAIMS" to exchange for severance pay, in order to deprive these employees' Due Process and

16  Equal Protection Rights of the Fifth and Fourteenth Amendments of The Constitution.

17

18  47. Most of these separated employees, if not all, would be coerced into signing the "WAIVER" in

19  exchange for severance pay, or otherwise, be left without means to sustain basic necessities such as

20  mortgage payment, family support, automobile payment, insurance premium, etc; when being forced out

21  of employment WITHOUT NOTICE. (Labor Code Section 201 and 2926 and Title VII 4.01[2][c])

22

23  48. Plaintiff Chang's counsel, Peter Myers, made written requests to Defendant McKesson indicating that

24  it was a violation of Employee Retirement Income Security Act (hereinafter "ERISA") to demand

25

26

27

| This page may be used with any Judicial Council form or any other paper filed with the court. | Page  12 |
|---|---|

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

| SHORT TITLE: | CASE NUMBER: |
|---|---|

1  "WAIVER" from Plaintiff in order to obtain severance pay, and the "WAIVER" was overly broad

2  requiring Plaintiff to WAIVE ALL CLAIMS including the Employee Stock Participation Plan, in

3

4  whcih Plaintiff Chang was class representative in Chang v. McKesson HBOC, U.S.D.C., N. Dist. Cal.

5  C99-5075; a class action against McKesson Breach of Fiduciary Duty causing the Employee Retirement

6  Stocks to plummet from $90's to $20's per share.(ERISA and Title VII Sec 4.01[2][e] and Cal Code 206.5)

7

8  49. The Defendant McKesson Vice President for Compensation and Benefits, Christopher Maher,

9  responded that the "McKesson HBOC Inc. Severance Plan SPD" required Plaintiff to execute a "WAIVER

10  AND GENERAL RELEASE" as a requisite for Plan participation, and that execution of such "WAIVER"

11

12  will constitute a "WAIVER AND RELEASE" of EVERY CLAIM the eligible employee might otherwise

13  have arising out of her employment or the termination of her employment.  In addition, the Plan does not,

14  in any way, limit the authority or discretion of McKesson to require the release of any matter not specified

15  in the Plan.  The Vice President also stated that the Plan permits McKesson to request a RELEASE as IT

16  SEES FIT, including a RELEASE OF CLAIMS RELATING TO OTHER BENEFIT PLANS.

17

18  50. The Defendants McKesson INTENDED TO BOTCH THE ERISA CLASS ACTION by demanding

19  Plaintiff Chang to execute the overbroad "WAIVER" to waive all claims including claims as a

20  participant in the Employee Stock Participation Plan. not only the employment-termination-related claims.

21  (Coercion - Tort Liability For Punitive Damages and Cal Civil Code Sec 51[b] and II CCR 7286.6[b] and

22  II CCR 7286.9 Remedies)

23

24  51. The Vice President Christopher Maher omitted the facts that Plaintiff had received portion of the Plan

25

26

27

This page may be used with any Judicial Council form or any other paper filed with the court.

Page _13_

SHORT TITLE:

CASE NUMBER:

1  benefits as qualified participant of the "McKesson HBOC Inc. Severance Plan SPD". And that

2  Defendants McKesson withholding the severance pay and continuous coercion for Plaintiff to execute the

3

4  "WAIVER" was to PROHIBIT THE CLASS ACTION FROM GOING FORWARD against its breach of

5  fiduciary duty causing the Employee Retirement Stocks plummet. (42 U.S.C. Section 2000e-3[a] and

6

7  Title VII Section 43.10[2][d] - Retaliation and ERISA Claims)

8  52. Plaintiff Chang requested a Plan-Hearing after the appeal for severance pay was denied. It was

9  also denied by Defendants McKesson stating that Plaintiff could ONLY SUBMITT WRITTEN

10  REQUEST for review, after McKesson had denied several oral and written request and appeal from

11

12  Plaintiff Chang's counsel. (42 U.S.C. Sec 2000e-3[a] and Title VII Sec 43.10[2][d]  and ERISA Claims)

13  53. Defendants McKesson's acts were willful, wanton, malicious, and oppressive, were undertaken with

14  the intent to defraud and deprive Plaintiff Chang of employment, severance pay, and CLASS ACTION

15  representing McKesson Subclass Employees Retirement Stock Plans (Chang v. McKesson HBOC,

16

17  U.S.D.C.,N. Dist. Cal. C99-5075 and C-00-20030 RMW).

18                    FOURTH CAUSE OF ACTION
19        NEGLIGENT INTENTIONAL INFLICTION OF EMOTION DISTRESS

20  54. The Defendant McKesson stands in a SPECIAL RELATION to its employees that gives him a power

21  of control over the employees' action. Defendant McKesson is required to use REASONABLE CARE to

22

23  exercise that control to prevent its employees from injuring the Plaintiff. Starting from April 1996

24  through March 1999 Plaintiff was discriminated against by the Division Manager Kevin Myrick and

25  DOE1. Within few months from Plaintiff filing the grievance and appeal with management Plaintiff was

26

27

This page may be used with any Judicial Council form or any other paper filed with the court.          Page *14*

SHORT TITLE:

CASE NUMBER:

1   laid off wrongfully by the Vice President Tom Von, and Division Managers Donna Draher and Tom

2   Puthuff, knowing Plaintiff suffered from migraine and tension headaches caused by employment related

3   stress. During the termination meeting, McKesson Vice President Tom Von repeatedly coerced Plaintiff

4

5   into signing the "WAIVER" to deprive Plaintiff's Due Process and Equal Protection Fundamental Rights

6   guaranteed by The Constitution. Plaintiff did not sign the "WAIVER" and was escorted to exit the

7

8   company building immediately WITHOUT NOTICE, WITHOUT CAUSE, AND WITHOUT

9   SEVERANCE PAY, after having to work full time and most of the weekends and seven days on-call

10  duties for three and one half years. All Plaintiff's subsequent request and appeal and Plan-Hearing for the

11

12  severance pay were denied, unless plaintiff execute the "WAIVER" for ALL CLAIMS INCLUDING

13  CLASS ACTION for McKesson breach of fiduciary duty against the EMPLOYEE RETIREMENT

14  STOCK PARTICIPATION PLAN (ERISA). The Defendant McKesson had a DUTY to prevent its

15

16  employees injuring the Plaintiff. The Defendant McKesson intentionally BREACHED THAT DUTY,

17  which was the DIRECT AND PROXIMATE CAUSE of Plaintiff Chang's emotional distress. The

18  Plaintiff sustains special damages including back pay (pay increase), vacation pay, disability pay,

19

20  severance pay, loss of earnings capacity, and other special damages in an amount according to proof as

21  established at trial. The conduct of Defendant McKesson was unconscionable, despicable and was

22  conduct AGAINST PUBLIC POLICY. As such, Plaintiff Chang is entitled to punitive and exemplary

23

24  damages against Defendants McKesson, and each of them according to proof. Wherefore, Plaintiff

25  Chang prays for damages against Defendant McKesson, and each of them. (Title II CCR 7286.6[b])

26

27

This page may be used with any Judicial Council form or any other paper filed with the court.

Page _15_

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

1                       FIFTH CAUSE OF ACTION

2      CONSTITUTIONAL RIGHTS OF THE FIFTH AND FOURTEENTH AMENDMENTS

3    55. The fundamental rights of Due Process and Equal Protection guaranteed by The Fifth And Fourteenth

4    Amendments Of The Constitution Of The United States.  The Defendant McKesson consistently denied

5    Plaintiff Chang's Due Process and Equal Protection fundamental rights.  Upon Division Manager

6

7    TOM PUTHUFF'S ADVISE, Plaintiff Chang filed grievance and appeal against DOE1 and previous

8    Division Manager Kevin Myrick.  Plaintiff Chang was wrongfully terminated caused by filing the

9    grievance and appeal, and was further punished by Defendant McKesson withholding the severance pay.

10

11    The Defendants McKesson knew that they laid off Plaintiff on "REDUCTION IN FORCE" was FALSE,

12    therefore, was determined to coerce Plaintiff Chang executing the "WAIVER" to eliminate any possible

13    lawsuit against the Company.  Between April 1999 and March 2007, Plaintiff Chang made

14

15    numerous request, appeal, and demand for the severance pay, but all were denied by the Defendants

16    McKesson intended to deprive Plaintiff Chang Due Process and Equal Protection fundamental rights.

17

18    (Invidious discriminatory purpose or policy is PER SE INVALID and Restatement II Torts Sec 870)

19                      SIXTH CAUSE OF ACTION

20       EQUITABLE TOLLING OF STATUTE OF LIMITATION

21    56. Equitable tolling appropriate if (1) defendant has actively misled plaintiff (2) plaintiff has in some

22    extraordinary way been prevented from asserting his or her rights. (Title VII Sec 43.10[6][c][i])

23    57. Equitable tolling may apply if a defendant, through wrongful conduct, prevents a plaintiff from

24

25    asserting a claim or if extraordinary circumstances beyond the plaintiff's control make it impossible to file

26

27

| This page may be used with any Judicial Council form or any other paper filed with the court. | Page _16_ |
|---|---|

SHORT TITLE:                                                    CASE NUMBER:

1  a claim on time. (Title VII Section 43.10[6][c][i])

2  58. Plaintiff Chang realleges and incorporates herein by this reference each and every allegation contained

3  in paragraphs 35 through 57, inclusive, of the foregoing general allegations and makes them a part of the

4

5  instant cause of action as though fully set forth.

6  59. Starting from March 30, 1999 when Plaintiff Chang's employment with Defendant McKesson was

7

8  wrongfully terminated, Defendant McKesson had fraudulently, oppresively, maliciously coerced Plaintiff

9  to execute the "WAIVER AND GENERAL RELEASE", in order to preclude its liabilities and in its

10 attempt to botch the ERISA Class Action.  (Chang v. McKesson HBOC, U.S.D.C., N. Dist. Cal. C99-5075

11

12 and C-00-20030-RMW)

13 60. In April 1999, Plaintiff Chang seeked representation for the wrongful termination and the Defendant

14 McKesson breach of fiduciary duty causing Employee-Retirement-Income-Stocks (ERISA) plummet.

15

16 61.  After several meetings Plaintiff's counsels made the decision to go forward with the ERISA Class

17 Action Claim, but was UNABLE to represent Plaintiff on the INDIVIDUAL CLAIMS of wrongful

18 termination and fraud against Defendant McKesson, due to conflict of interest.  Plaintiff Chang was the

19

20 named representative of the ERISA Class Action (Paragraph 59).

21 62.  Although the counsels were unable to represent Plaintiff Chang's INDIVIDUAL claims against

22 Defendant McKesson,  the counsel Peter Myers' Law Firm made verbal and written request and appeal

23 on behalf of Plaintiff for the severance pay from February 2000 through March 2001.

24

25 63. The Defendant McKesson Vice President Christopher Maher, denied Plaintiff's right to the severance

26

27

This page may be used with any Judicial Council form or any other paper filed with the court.

Page _17_

SHORT TITLE:

CASE NUMBER:

1    pay in the "McKesson HBOC, Inc. Severance Plan SPD" in the letters of denial dated May 1, 2000 and

2    March 1, 2001; while Plaintiff Chang had qualified and received partial benefits of the SEVERANCE

3    PLAN on the employment termination date of March 30, 1999. The SEVERANCE PLAN benefits

4    received were (1) transitional education credit of $500 (2) COBRA health insurance premium for

5    three months (3) membership with Alumnae Resources (4) three day "Job Preparation Workshop" which

7    was scheduled to start immediately following the termination.

8    64. The Defendant McKesson Vice President fraudulently stated in the letter of denial, "The PLAN

9    Administrator upholds its earlier determination that Ms. Chang IS NOT ENTITLED TO BENEFITS

10    UNDER THE PLAN", and omitted the facts that Defendant McKesson SELECTIVELY WITHHELD

12    PARTIAL BENEFITS UNDER THE PLAN of the severance pay, in order to coerce Plaintiff Chang to

13    execute the "WAIVER AND GENERAL RELEASE" intending to deprive Plaintiff's DUE PROCESS and

15    EQUAL PROTECTION Fundamental Rights and attempting to BOTCH THE ERISA CLASS ACTION.

16    (Title VII Sec 43.10[6][c] and Sec 4.01[2][c][i])

18    65. All the written and hearing requests and appeal made by Plaintiff's Counsel for the severance pay were

19    denied by Defendant McKesson. Counsel Peter Myers advised Plaintiff Chang that all revenues in

20    obtaining the severance pay had been exhausted, and Plaintiff who as the ERISA Class Representative

22    had the duty to represent the interest of all class members other than signing the "WAIVER" to give up

23    the ERISA Class Action. Plaintiff Chang believed that the ONLY ALTERNATIVE was to set aside the

24    INDIVIDUAL CLAIMS OF WRONGFUL TERMINATION AND FRAUD until after the ERISA Class

25

26

27

This page may be used with any Judicial Council form or any other paper filed with the court.

Page 18

SHORT TITLE:

CASE NUMBER:

1  Action concluded. (Title VII Section 43.10[6][c][i][ii])

2  66. The Defendant McKesson and its management employees , through WRONGFUL CONDUCT,

3

4  prevented Plaintiff from asserting a claim, OR, if EXTRAORDINARY CIRCUMSTANCES BEYOND

5  Plaintiff's control make it impossible to file a claim on time, EQUITABLE TOLLING may be available.

6
   (Title VII Section 43.10[6][c][i][ii] and Section 43.10[2][d] - Retaliation)
7

8  67. The original ERISA Class Action was filed on November 24, 1999 (U.S.D.C., N. Dist. Cal.

9  C99-5075).  The Consolidated Amended Complaint for the McKesson Sub-Class was filed on December

10 31, 2002 (C00-20030 RMW).  On September 1, 2006 the preliminary settlement was approved by Judge

11
   Whyte who issued the Final Order And Judgment.  The Line 18 of the Final Order And Judgment stated,
12

13 "Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out

14 any of the provisions of the Agreement. (Title VII Section 43.10 [6][c][ii])

15
   68. The Defendant McKesson initially scheduled the settlement compensation to be distributed to the
16

17 ERISA class members in January 2007.  It was postponed to February but showed no sign of completion

18 by March 2007.

19
   69.  On March 12, 2007, Plaintiff Chang sent a demand letter to Defendant McKesson President, John
20

21 Hammergren, for the defrauded severance pay and unreasonable delay of settlement compensation to the

22 individual class members. (Title VII Section 43.10[2][d] and Judge Whyte's Final Order And Judgment

23 dated September 1, 2006, C-00-20030 RMW)

24
25 70.  The McKesson Defendant Senior Vice President, Jerry Warren, responded by a letter of denial dated

26

27
   This page may be used with any Judicial Council form or any other paper filed with the court.

Page _19_

ADDITIONAL PAGE
Attach to Judicial Council Form or Other Court Paper

SHORT TITLE:

CASE NUMBER:

1   April 10, 2007 stating, "After careful review, we have reconfirmed the PLAN Administrator's 2001

2   determination that you are NOT ENTITLED to benefits under the PLAN." The letter of denial did not

3

4   explain the unreasonable delay of ERISA settlement distribution to the individual class members. The

5   Defendant McKesson continued its fraudulent and oppresive denial of Plaintiff Chang's entitlement to the

6   SEVERANCE PAY UNDER THE PLAN. (Vicarious Liability and Respondeat Superior-Intentional Tort)

7

8   71. The California State Law - Employee was entitled to severance pay where the employer had a clear,

9   definite and unambiguous severance policy. The coercion to sign the "WAIVER AND RELEASE" or

10  otherwise disqualify SEVERANCE BENEFITS is MISDEMEANOR. The facially non-discriminatory

11  SEVERANCE PLAN with DISCRIMINATORY PURPOSE is PER SE INVALID. (Title VII Sec 4.01[2]

12

13  [c] and Section 43.10[2][d] and Unjust Enrichment and Vicarious Liability and Respondeat Superior)

14  72. On May 3, 2007, the final phase of ERISA Settlement distribution had completed. Because the

15  ERISA Class Action has now concluded and ensuing is this complaint against the Defendant McKesson.

16

17  73. The Defendant McKesson, through its WRONGFUL CONDUCT, and the EXTRAORDINARY

18  CIRCUMSTANCES beyond Plaintiff's control (ERISA Class Action), make it impossible to file a claim

19  on time. Equitable Tolling may be available. (Title VII Section 43.10[2][d] and Sec. 43.10[6][c][i][ii])

20

21                                    PRAYER FOR DAMAGES

22  1. For Plaintiff's general damages according to proof;

23

24  2. For Plaintiff's special damages according to proof including for loss of income from disabilities.

25  3. For pre-judgment interest according to proof;

26

27

This page may be used with any Judicial Council form or any other paper filed with the court.

| SHORT TITLE: | CASE NUMBER: |
| --- | --- |
| | |

4. For compensatory and general and special damages, together with interest thereon at 10% per annum;

5. For punitive and exemplary damages in an amount appropriate to deter and punish defendants in an amount according to proof;

6. For preparation of this complaint equivalent to an attorney's fees;

7. For plaintiff's costs of suit herein;

8. For such other and further relief as the Court may deem proper.

///
//

Dated : June 28, 2007

By _Christ Chong_

Plaintiff

This page may be used with any Judicial Council form or any other paper filed with the court.

Page 2/

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper